**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Rodney R. OLIVER, Defendant-
Appellant.**

**No. 208-69.**

United States Court of Appeals,
Tenth Circuit.

Feb. 16, 1970.

Rehearing Denied March 6, 1970.

Harold H. Parker, Albuquerque, N. M., for appellant.

Stephen L. ReVeal, Albuquerque (Victor R. Ortega, U. S. Atty., and John A. Babington, Asst. U. S. Atty., Albuquerque, N. M., on the brief), for appellee.

Before HICKEY and HOLLOWAY, Circuit Judges, and EUBANKS, District Judge.*

HICKEY, Circuit Judge.

Appellant Oliver was indicted on two counts involving the rescue of property seized by virtue of a tax levy for failure to pay transportation tax.

The first count involving a threat of bodily harm to an I.R.S. agent at the time of rescue was dismissed by the trial court when the jury became deadlocked in an effort to reach a verdict.

The jury found Oliver guilty of the second count which charged that he rescued property which had been seized pursuant to 26 U.S.C. § 6331(b), Internal Revenue Code, in violation of 26 U.S.C. § 7212(b).[1]

The trial court suspended sentence and placed Oliver on probation. This appeal challenges the conviction by the jury.

The points on appeal raise the questions: (1) Was the seizure valid thereby

---

\* Sitting by designation.

1. 26 U.S.C. § 7212(b) provides: "Any person who forcibly rescues or causes to be rescued any property after it shall have been seized under this title, or shall attempt or endeavor so to do, shall, ex- cepting in cases otherwise provided for, for every such offense, be fined not more than $500, or not more than double the value of the property so rescued, whichever is the greater, or be imprisoned not more than two years."

prohibiting a rescue of the seized property by the taxpayer owner? (2) Was the court's instruction, "that notice and demand need not be in writing but actual notice and demand is sufficient," a proper statement of the law? (3) Was the constitutional warning given Oliver after he was in custody sufficient to meet the tests established in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)? (4) Was the prosecution's cross-examination question relative to violent reputation, i. e. whether Oliver had assaulted his wife, prejudicial to Oliver's case?

The relevant facts adduced in the record indicate Oliver owed prior transportation taxes on his truck for two separate years. After consultation with an I.R.S. agent, Oliver signed a tax report showing the tax due and transmitted it to the proper office. Payment did not accompany the tax return because Oliver was unemployed and without funds to transmit to the I.R.S. During several intervening months there were discussions between the I.R.S. and Oliver relative to the delinquency. It is agreed that Oliver disclosed and I.R.S. knew there were two vehicles unencumbered which could be levied upon for payment of the tax.

On September 5, 1968, the I.R.S. levied on wages then due from Oliver's employer, searched for a bank account in Oliver's hometown, and seized one of the vehicles. The agents marked the seized vehicle with a seizure sticker and tags and hired a tow truck to tow the vehicle to a location where it would be impounded while notice and sale were accomplished.

While the I.R.S. agents were in the process of towing the vehicle from Oliver's home to the place where it would be impounded, Oliver came upon them, stopped the tow truck, and rescued the vehicle. He returned the vehicle to his home, later moving it to a neighbor's lot for safekeeping.

On the second day after the described rescue Oliver was arrested and taken before a Commission for arraignment, and advised of his rights.

Thereafter, at arraignment on the grand jury indictment, the trial court appointed a lawyer for Oliver.

After the arrest and before and after the Commissioner's arraignment, Oliver talked to the I.R.S. agents who had given him the warning which is here challenged and will be later discussed in detail.

At the trial Oliver offered the defense that he had not rescued a seized vehicle in that it had not been properly seized upon notice and demand. The jury found from all the evidence adduced, and the court agreed, that actual notice had been given and demand made. The court denied the motion to dismiss after the case closed and gave the instruction to which objection is urged.

There is a dearth of cases discussing 26 U.S.C. § 7212(b), however, we find the reasoning hereinafter quoted to be relevant.

"The statute in question, 26 U.S.C. § 7212(b), makes it a crime to forcibly rescue ' * * * any property after it shall have been seized under this title. * * *' The essential elements required by the statute to constitute the offense are seizure and rescue. One way for the Government to establish a lawful seizure is to show that the property was seized by a person authorized to do so by virtue of his office. * * *

"The defendant's other contentions identified in the second preceding paragraph in effect attack the validity of the lien obtained by the Service. The necessary premise for defendant's assertions is that they are relevant factors in a trial where a defendant is charged with the criminal offense of rescuing property seized by the Service under the circumstances herein stated. We think the assumption is unwarranted. Such issues are relevant in civil proceedings attacking the Government's seizure. They are not relevant here. To permit such issues

to be raised in connection with a prosecution under these statutes would be to encourage violent self-help where civil remedies are admittedly available." United States v. Scolnick, 392 F.2d 320, 326 (3rd Cir.), cert. denied, Brooks v. United States, 392 U.S. 931, 88 S.Ct. 2283, 20 L.Ed.2d 1389 (1968). *Accord,* United States v. Bernstein, 287 F.Supp. 84 (S.D.Fla.1968).

■ The foregoing sustains the trial court's application of the law both in denying the motion to dismiss and instructing the jury.

■ The challenged conduct of the government's attorney relates to a question propounded to Mrs. Oliver on cross-examination. The question propounded was whether she had ever been required to obtain a restraining order against her husband because of his violence toward her. The question was objected to and the objection sustained. She did not answer. The court instructed on what evidence should be considered and therefore eliminated the challenged question from consideration. The fact that the jury was deadlocked on count one which required the exhibition of a violent nature to the officer, is convincing that this unanswered question did not prejudice Oliver with the jury.

■ The question relating to the adequacy of the warning given Oliver after his arrest gives us concern.

The record reflects the warning given was, "[t]hat he should be aware that he could decline to answer any questions he felt might tend to incriminate him. He could decline to give us any information, * * * that he had the right to an attorney; that if he could not afford an attorney, the United States Commissioner in Tucumcari would appoint one for him, and I told him we wanted to ask him certain questions about this seizure and about the actions that happened on the 5th of September." The agent testified regarding the statements made by the accused after he had been given the foregoing warning. Objection was overruled and the testimony permitted to stand. This was error.

I.R.S. News Release I.R. 949, November 26, 1968, describes I.R.S. Document 5661 as a change in procedure for advising taxpayers of their rights during an investigation conducted by special agents of the Intelligence Division. The document provides:

"STATEMENT OF RIGHTS. Before we ask you any questions, it is my duty to advise you of your rights.

"You have the right to remain silent.

"Anything you say can be used against you in court, or other proceedings.

"You have the right to consult an attorney before making any statement or answering any question, and you may have him present with you during questioning.

"You may have an attorney appointed by the U.S. Commissioner or the court to represent you if you cannot afford or otherwise obtain one.

"If you decide to answer questions now with or without a lawyer, you still have the right to stop the questioning at any time, or to stop the questioning for the purpose of consulting a lawyer.

"HOWEVER—

"You may waive the right to advice of counsel and your right to remain silent, and you may answer questions or make a statement without consulting a lawyer if you so desire."

This statement in the pre-custody stage of investigation indicates the caution which came after Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L. Ed.2d 381 (1968).

However, this case was an in-custody interrogation and the release continues, "IRS has made no change in its existing

instructions that if it becomes necessary to interview a person who is in custody, an Agent must give a comprehensive statement of rights before any interrogation. This statement warns the person in custody that he may remain silent and that anything he says may be used against him. A person in custody also must be told that he has the right to consult or have present his own counsel before making a statement or answering any questions, and that if he cannot afford counsel he can have one appointed by the U. S. Commissioner."

It is evident from the record that the agent's warning did not include, "that he has a right to consult with, and have present prior to and during interrogation, an attorney, either retained or appointed." Annot., 10 A.L.R.3rd 1060, § 5 (1966). During oral argument government counsel confessed this warning was not given. "Each of [the *Miranda* warnings including the one pertaining to the right to counsel] must be given, it not being sufficient to give some but not all of these warnings." *Id.*

This court recognized that each warning must be given to permit the testimony to be admitted. Coyote v. United States, 380 F.2d 305 (10th Cir.), cert. denied, 389 U.S. 992, 88 S.Ct. 489, 19 L. Ed.2d 484 (1967). We have also held that in addition to the warnings, the right to have counsel present during interrogation must be effectively waived. Sullins v. United States, 389 F.2d 985 (10th Cir. 1968).

During oral argument government counsel argued the inadvertent omission was harmless error because there was ample evidence aside from the statements of the accused to support the conviction. Such an assertion is directly in conflict with Miranda v. Arizona. *See* footnote 33, 384 U.S. 436 at 464, 86 S. Ct. 1602.

In view of the foregoing, we reverse and remand to the trial court for retrial in line with the discussion hereinabove set out.

Reversed and remanded.