James Burnett McKay LAING

v.

UNITED STATES of America, et al.

Civ. A. No. 6661.

United States District Court,
D. Vermont.

Sept. 12, 1973.

**470**

Martin G. Weinberg, Crane, Inker & Oteri, Boston, Mass., and Duncan Frey Kilmartin, Rexford & Kilmartin, Newport, Vt., for plaintiff.

John P. Hines, Dept. of Justice, Washington, D. C., and George W. F. Cook, U. S. Atty., Rutland, Vt., for defendants.

## OPINION AND ORDER

COFFRIN, District Judge.

On July 15, 1972 plaintiff filed an action seeking an injunction against the continued possession by the Internal Revenue Service (IRS) of money allegedly belonging to him and a declaratory judgment that the provisions of the Internal Revenue Code under which the assessment and levy on his property were made were unconstitutional. A flurry of motions to accelerate the course of this proceeding were filed shortly after the complaint and plaintiff attempted to depose various federal officials which the Government vigorously opposed. On September 18, 1972 the IRS filed a motion to dismiss or in the alternative for summary judgment. Hearings were held on the various motions on October 24, 1972 and July 31, 1973. Taking the facts in the light most favorable to the plaintiff and from the affidavits filed by the Government which plaintiff concedes are accurate as far as they go, we find the following factual situation before us. On May 31, 1972 plaintiff, a citizen of New Zealand, entered the United States from Canada on a B–2 visa.[1] On June 24, 1972 plaintiff and two companions departed from the United States to Canada by way of Vermont but were refused entry into Canada by Canadian officials. As a result, plaintiff returned to the United States where he was stopped by U. S. Customs officials at Derby, Vermont. A suitcase containing approximately $310,000[2] was found in the engine compartment of the automobile and plaintiff, his companions and the money were detained at the border. On the same day, Fulton Fields, the District Director for IRS in Burlington, Vermont, was advised by customs officials of the above facts and, relying on them, found that plaintiff and those with him were in the process of putting their assets beyond the reach of the Government by removing them from the country thereby tending to prejudice or render ineffectual the collection of the tax. Upon making this finding, Fields terminated the 1972 taxable years of the three individuals and sent two IRS agents, Joseph O'Kane, Chief of the Intelligence Division, IRS, Burlington, Vermont, and James Perry, Assistant Chief of the Collection and Taxpayer Service Division, Internal Revenue Service, Boston, Massachusetts, to the border to take the steps necessary to collect the tax liabilities of these persons. Upon arriving at the border, the IRS agents interviewed plaintiff and his associates and demanded payment of tax from each in the amount of $310,000. Upon their refusal, the agents contacted the IRS Service Center in Andover, Massachusetts, and requested and orally received a tax assessment upon each person in the amount of $310,000. These assessments were communicated orally to the plaintiff by the IRS agents and after a second refusal, the sum of $306,896.50 was seized from the suitcase and applied to the tax liabilities of each person in the car.

---

1. 8 C.F.R. § 214.2(b) (1973).

2. According to IRS affidavits, the actual amount seized was $306,896.50, but plaintiff claims he was in possession of $310,000.

On June 29, 1972, Edward Gallagher, Acting Director of IRS in Burlington, Vermont, sent plaintiff a written declaration made pursuant to 26 U.S.C. § 6851[3] that plaintiff was placing his assets beyond the reach of the Government and thus his taxable year 1972 was terminated and a tax of $195,985.55 for the period from January 1, 1972 to June 24, 1972 was assessed amd made payable. This letter was sent to the address plaintiff gave U. S. Customs officials but it was returned to IRS "addressee unknown—no such street and number."

The plethora of theories relied upon by plaintiff can be reduced to three major contentions:

1). That the procedures employed by the IRS summarily deprived plaintiff of his property without a hearing in contravention of the Fifth Amendment to the United States Constitution;

2). The IRS's assessment of tax and levy of plaintiff's money was not in conformity with the applicable sections of the Internal Revenue Code and thus injunctive relief is warranted.

3). Assuming the IRS properly followed the Code, it acted arbitrarily and capriciously in seizing plaintiff's money.

Plaintiff's effort to obtain declaratory relief in this action must fail because the plain wording of the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, specifically excludes controversies concerning federal taxes. Thus, questions involving federal taxes may not be considered under the declaratory judgment section and the federal courts are without jurisdiction to enter declaratory judgments in such cases. United States v. Teitelbaum, 342 F.2d 672 (7th Cir. 1965), cert. denied, 382 U.S. 831, 86 S. Ct. 71, 15 L.Ed.2d 75 (1965); Standard Oil Co. (N.J.) v. McMahon, 139 F.Supp. 690 (S.D.N.Y.1956), aff'd, 244 F.2d 11 (2d Cir. 1956).

It is also settled beyond controversy that summary attachment for the collection of internal revenue is constitutionally permissible and does not run afoul of the procedural requirements of due process. Thus, no hearing was required before plaintiff's property was seized. Phillips v. Commissioner, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931); Parrish v. Daly, 350 F.Supp. 735 (S.D.Ind.1972). The holding in Phillips v. Commissioner, *supra*, was recently reaffirmed in Fuentes v. Shevin, 407 U.S. 67, 91–92, 92 S.Ct. 1983, 32 L. Ed.2d 556 (1972).

Plaintiff's constitutional and declaratory judgment contentions being fruitless, his case must rise or fall solely on the provisions of the Internal Revenue Code. In seeking to restrain the assessment or collection of a tax, plaintiff must come within one of the narrow exceptions to the anti-injunction provisions of 26 U.S.C. § 7421(a). Plaintiff contends that the exception to the broad anti-injunction provisions of Section 7421(a) contained in 26 U.S.C. §

---

3.  26 U.S.C. § 6851(a)(1) provides that:

(a) *Income tax in jeopardy.—*

(1) *In general.*—If the Secretary or his delegate finds that a taxpayer designs quickly to depart from the United States or to remove his property therefrom, or to conceal himself or his property therein, or to do any other act tending to prejudice or to render wholly or partly ineffectual proceedings to collect the income tax for the current or the preceding taxable year unless such proceedings be brought without delay, the Secretary or his delegate shall declare the taxable period for such taxpayer immediately terminated, and shall cause notice of such finding and declaration to be given the taxpayer, together with a demand for immediate payment of the tax for the taxable period so declared terminated and of the tax for the preceding taxable year or so much of such tax as is unpaid, whether or not the time otherwise allowed by law for filing return and paying the tax has expired; and such taxes shall thereupon become immediately due and payable. In any proceeding in court brought to enforce payment of taxes made due and payable by virtue of the provisions of this section, the finding of the Secretary or his delegate, made as herein provided, whether made after notice to the taxpayer or not, shall be for all purposes presumptive evidence of jeopardy.

6213(a) places restrictions on deficiency assessments and plaintiff argues that section 6213(a) prohibits immediate levies with no waiting period for the collection of tax except as provided in 26 U.S.C. § 6861.[4] Accordingly, plaintiff contends IRS was forced to proceed under section 6861 and, since the IRS never sent plaintiff a deficiency notice as provided in section 6861, the IRS did not follow the legislatively mandated procedures and thus injunctive relief can be had under section 7421(a).

The Government argues that since it proceeded under 26 U.S.C. § 6851 the procedures required in section 6861 are irrelevant, the section 6213(a) exception to the anti-injunction statute is inapposite and therefore plaintiff's action must be dismissed.

■ The threshold inquiry therefore becomes whether section 6851 or section 6861 is applicable to this controversy. Section 6851 provides for the termination of a taxable year and demand for an immediate payment of tax where jeopardy, i. e. prejudice against collection, is deemed present by IRS. In contrast, section 6861 provides for the jeopardy assessment of a deficiency in tax as defined by 26 U.S.C. § 6211(a). Generally, a deficiency is defined by section 6211(a) as the amount by which the tax imposed by statute exceeds the amount of tax shown on a taxpayer's return.

By definition then, such a deficiency could not be determined until a return for a taxpayer's full taxable period has been filed or until the due date for filing such a return has expired. In this case, there was no return filed by the taxpayer and so there could be no deficiency. Since there was no deficiency there could be no deficiency assessment and consequently section 6861 cannot apply in this case.

Irving v. Gray, 479 F.2d 20 (2nd Cir. 1973) holds that section 6861 and section 6213(a) do not apply in the case of a jeopardy assessment made in respect to a departing or concealing taxpayer assessed under section 6851.[5] *See also* Williamson v. United States, No. 17992 (7th Cir. filed April 8, 1971); Parrish v. Daly, *supra.*

Plaintiff contends that *Irving* is not binding precedent because in that case there was no attack on the procedure used by IRS nor was there any question of the arbitrariness of the IRS's determination that a jeopardy assessment should be made.

With regard to plaintiff's first proffered distinction, we note the similarity of the chronology of the IRS's action in this case and in *Irving,* both of which in our opinion satisfy the provision of 26 U.S.C. § 6331(a), the general levy and distraint provisions of the Code.[6] Since

---

4. 26 U.S.C. § 6861(a) provides that:
   (a) *Authority for Making.*—If the Secretary or his delegate believes that the assessment or collection of a deficiency, as defined in section 6211, will be jeopardized by delay, he shall, notwithstanding the provisions of section 6213(a), immediately assess such deficiency (together with all interest, additional amounts, and additions to the tax provided for by law), and notice and demand shall be made by the Secretary or his delegate for the payment thereof.

5. Section 6851 does not contain its own assessment authority but, contrary to plaintiff's contention, this section derives its assessment authority from 26 U.S.C. § 6201. Irving v. Gray, *supra.*

6. Although *Irving* involved a written termination of the taxable year, notice of levy and

assessment of tax, we do not believe the oral effectuation of these procedures is improper. Section 6851 does not, by its terms, require a writing and neither 26 U.S.C. § 6303 (notice and demand for tax) nor 26 U.S.C. § 6155 (payment on notice and demand) require a writing. Also, the levy and distraint provisions of section 6331 permit a levy to be made by giving notice in person. *See* United States v. Oliver, 421 F.2d 1034 (10th Cir. 1970) and United States v. Bernstein, 287 F.Supp. 84 (S.D.Fla.1968) which hold that property levied upon and seized under section 6331 need not be accomplished by written notice, actual notice and demand are sufficient. Finally, we perceive that the nature of the jeopardy proceeding under section 6851 is not suited to the cumbersome requirements of written notice, *cf.* Irving v. Gray, *supra* ("Section 6851 was enacted to allow IRS to prevent taxpayers from fleeing

we have previously determined that the summary assessment and levy procedure is not constitutionally impermissible, we reject plaintiff's argument that the procedures employed by the Government in this case were improper.[7]

We also reject plaintiff's challenge to the arbitrariness of the IRS's determination that there was jeopardy against the collection of these taxes which justified the termination of the taxable year. Plaintiff, relying upon Lucia v. United States, 474 F.2d 565 (5th Cir. 1973) and Pizzarello v. United States, 408 F.2d 579 (2d Cir. 1969), contends that the Government must have some basis in fact for the seizure and absent proof of this, no assessment can be made. *Lucia* and *Pizzarello* are patently distinguishable from this case because they do not involve jeopardy assessments under section 6851 but rather assessments under 26 U.S.C. § 6862(a) for unpaid wagering taxes.

The distinction is crucial because, unlike section 6862(a), section 6851(a) provides that the finding of the secretary or his delegate that jeopardy is present is presumptive evidence of jeopardy. Thus, where the IRS, in the interest of collecting revenue, proceeds by proper steps under section 6851, its determination of the facts and their sufficiency to warrant resort to peremptory collection are not to be reviewed in injunction proceedings. United States v. Bonaguro, 294 F.Supp. 750, 753 (E.D. N.Y.1968), aff'd sub nom. United States v. Dono, 428 F.2d 204 (2d Cir. 1970), cert. denied, 400 U.S. 829, 91 S.Ct. 57, 27 L.Ed.2d 59 (1970). *See also* Transport Mfg. and Equipment Co. of Del. v. Train-

or, 382 F.2d 793 (8th Cir. 1967); Clark v. Campbell, 341 F.Supp. 171 (N.D.Tex. 1972). In this connection plaintiff does not attack the veracity of the affidavits filed by the Government describing the procedures employed in the assessment and levy but contends that they do not go far enough because they do not elucidate the factual basis for the Government's jeopardy determination under section 6851 which necessarily concludes that plaintiff was a person liable to pay tax. We disagree. This proceeding is not a proper vehicle for this challenge and we conclude that the affidavits are sufficiently explicit to enable the court to determine without doubt that the Government's procedures were proper and adequate. We determine that further exploration of the IRS's motivation for the assessment would not affect our decision concerning jurisdiction and is thus not relevant to any of the issues before the court in this particular proceeding. We therefore grant defendant's motion for a protective order barring the taking of depositions of the IRS officials noticed by plaintiff.

From what we have said, it is apparent that the judicially created doctrine announced in Enochs v. Williams Packing Co., 370 U.S. 1, 82 S.Ct. 1125, 8 L. Ed.2d 292 (1962) is inapplicable because it is far from clear that "under no circumstances could the Government ultimately prevail" in this case.

In light of the foregoing we grant the Government's motion to dismiss but we do point out that this decision does not foreclose plaintiff's opportunity for redress in subsequent proceedings presented to the court in a proper jurisdictional and procedural posture.

---

the country with taxable funds. . . . Under such circumstances, Congress has given IRS a little leeway to protect the revenues.")

7. We also note that even though the chronology in Williamson v. United States, *supra,* does not follow section 6331 the court refused to restrain the collection and assessment of the tax.