EUGENE G. FEISTMAN and LORRAINE B. FEISTMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Feistman v. Commissioner
Docket No. 4582-80.
United States Tax Court
T.C. Memo 1982-306; 1982 Tax Ct. Memo LEXIS 440; 44 T.C.M. (CCH) 30; T.C.M. (RIA) 82306; June 3, 1982. Eugene G. Feistman, pro se. James M. Eastman, for the respondent. RAUM
MEMORANDUM FINDINGS OF FACT AND OPINION RAUM, Judge: The Commissioner determined income tax deficiencies of $ 3,626 and $ 4,454 for the taxable years ended December 31, 1976, and December 31, 1977, respectively, against petitioners Eugene and Lorraine Feistman. The Commissioner also determined that petitioners were liable for additions to tax under section 6653(a), I.R.C. 1954, of $ 181 for 1976 and $ 223 for 1977, respectively. The issues for decision are: (1) Whether petitioners must include in gross income amounts withheld from their salaries, as conditions of employment, and contributed to retirement systems on their behalf; (2) whether petitioners may deduct tips paid in connection with meals which were not business related; (3) whether petitioners *443 may deduct sales taxes paid in respect of a wedding and meals which were not business related, in addition to amounts deducted on the basis of the optional state sales tax tables; (4) whether petitioners may deduct certain claimed expenses allegedly related to business; (5) whether the activity known as "Feistman Stamps, Coins and Accessories" was an activity engaged in for profit during 1976 or 1977; (6) whether any amount is deductible in 1977 in respect of the "Feistman Family Insurance Fund"; and (7) whether petitioners are liable for the additions to tax determined by the Commissioner for 1976 and 1977. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners, husband and wife, resided in Sepulveda, California, at the time their petition was filed. They filed joint income tax returns for the years in question. During 1976 and 1977, Eugene Feistman, a law school graduate, was employed as a probation officer by the County of Los Angeles, and Lorraine Feistman, a college graduate, was employed as a teacher by the Los Angeles Unified School District. Both petitioners, *444 as conditions of employment, were required to participate in the retirement systems of their respective employers. The following amounts were withheld from petitioners' salaries as employee contributions to the retirement systems during the years in question: 1976
1977
Eugene Feistman
$   894.74
$   972.24
Lorraine Feistman
1,361.88
1,531.20
$ 2,256.62
$ 2,503.44
On their income tax returns for 1976 and 1977, petitioners did not report these amounts as wages; instead, they were deducted from the gross wages on schedules attached to the returns. Petitioners claimed deductions of $ 421.10 and $ 295 for 1976 and 1977, respectively, for tips paid on "outside" or restaurant meals. It is stipulated that the amounts claimed were in fact paid. The cost of the meals was not deductible since they were unrelated to any business of the petitioners. In 1976, petitioners paid $ 95.39 sales tax on the cost of a wedding banquet, and in 1977, petitioners paid $ 109.68 sales tax on meals unrelated to business. The Commissioner disallowed deductions for these expenditures, apparently incorporating them in deductions allowed for amounts computed on the *445 basis of the optional state sales tax tables. Petitioners claimed a deduction in 1976 of $ 2,290.36 for "Work Expenses", of which $ 1,842 was disallowed by the Commissioner in the statutory notice of deficiency. For 1977, a deduction of $ 3,518 was claimed for similar expenses, of which amount $ 3,056 was likewise disallowed. Most of the claimed expenses were for travel and various publications. It is stipulated that these items are claimed primarily in relation to Lorraine Feistman's employment as a teacher, with a very few relating both to her teaching position and the activities of the petitioners in connection with "Feistman Stamps, Coins and Accessories". Petitioners produced a substantial volume of documentation in respect of these "Work Expenses" as to both 1976 and 1977. The documentation essentially consists of copies of checks to various organizations or individuals, and copies of receipts in respect of expenditures for, inter alia, gasoline, meals, and lodging. For the most part, the receipts are for expenditures incurred away from petitioners' home in Sepulveda, California. Petitioners also produced forms, apparently promulgated by the Los Angeles Unified School *446 District, concerning salary or other credit which can be obtained by a teacher for travel which is related to the teacher's assigned responsibilities. All of the forms in evidence were dated January 1, 1979, or later. No other evidence was submitted by petitioners, either at trial or as an exhibit attached to a stipulation of fact, concerning these "Work Expenses". [1]
*447 Petitioners incurred losses in connection with "Feistman Stamps, Coins and Accessories" (FSCA) of $ 4,475.48 for 1976 and $ 4,743.75 for 1977. Eugene Feistman has for many years collected stamps and coins as a hobby, but in 1974 he set up FSCA and segregated a collection of these items in a room of his house used only for this purpose. Approximately one-half of his time in respect of this activity was spent "servicing" "first day covers", which involved obtaining a first day postmark on an envelope bearing a newly-issued stamp and a "cachet", which is a picture related to the theme of the stamp. Eugene purchased 100 "first day covers" for every new stamp, and held these items for resale, though he was regularly selling only six of each 100 envelopes. The remainder of Eugene's time was split between the stamps and coins, apparently visiting customers or attending shows or "swap meets". At these shows or "swap meets", petitioner would generally set up a table or two and offer merchandise for sale. Those displaying merchandise at these events were generally dealers in stamps and coins, while the customers might be dealers or individual collectors. Petitioner also attended auctions, *448 at which he bid against individual collectors, rather than dealers, to purchase unsorted boxes of merchandise which he would then sort and resell or trade. Eugene kept a log of his revenues, inventory purchases, and expenses for the years in question. In June 1976, Eugene and other family members were issued a "Business Tax Registration Certificate" by the city of Los Angeles, which certificate bears the classification "Retail Sales". In July 1976, a "Merchant Member Identification Card" was issued to FSCA by BankAmericard. Petitioner used the card in accepting charges on BankAmericard at the shows he attended. FSCA was operated at a loss in each year from 1974 through 1979, but a small profit was made in 1980. At the time of trial, on May 26, 1981, petitioner expected to make a profit in 1981. On their 1977 income tax return, petitioners claimed a deduction of $ 1,089.10 as their proportionate share of a loss incurred by the "Feistman Family Insurance Fund" (FFIF). FFIF was begun in 1973 as a means of self-insurance for petitioners, their children, and their children's spouses, but it is not licensed by California (or any other state) nor recognized as an insurance company *449 by the California Department of Motor Vehicles. The members paid money into a bank account for FFIF ($ 1,570 in 1976 and $ 1,940 in 1977), and when a car belonging to a son-in-law of petitioners was damaged in 1977, FFIF paid to have the damage repaired. The $ 1,089.10 deducted by petitioners was their share of this damage payment, less their share of FFIF's interest income for 1977. OPINION 1. Retirement System Contributions. On four previous occasions, petitioners have appeared before this Court to litigate the deductibility of their mandatory contributions to their respective retirement systems, and on all four occasions the deductions have been denied. See Feistman v. Commissioner,63 T.C. 129, 133-134 (1974), appeal dismissed 587 F. 2d 941, 943 (9th Cir. 1978); Feistman v. Commissioner,41 T.C.M. 1057, 50 P-H Memo T.C. par. 81,105 (1981), appeal filed (9th Cir. Sept. 14, 1981); Feistman v. Commissioner,35 T.C.M. 1045, 1047, 45 P-H Memo T.C. par. 76,240 (1976), affd. per order 614 F. 2d 776 (9th *450 Cir.), cert. denied 449 U.S. 847 (1980); Feistman v. Commissioner,30 T.C.M. 590, 593, 40 P-H Memo T.C. par. 71,137 (1971), affd. per order (9th Cir. April 10, 1973). In the current episode of this long-running saga, petitioners have not adduced any new evidence to cast doubt on the applicability of our prior rulings to the tax years before us. We therefore sustain the Commissioner's determination on this issue. [2]
2. Tips. Petitioners have similarly litigated in this forum the deductibility of tips paid in respect of nonbusiness meals, and on both prior occasions we have held that such payments are not deductible. Feistman v. Commissioner,supra,41 T.C.M. at 1060, 50 P-H Memo T.C. at 81-376; Feistman v. Commissioner,supra,35 T.C.M. at 1047, 45 P-H Memo T.C. at 76-1032. Since the instant facts are *451 identical to the prior cases, we hold for the Government on this issue. 3. Sales Taxes. The Commissioner has allowed petitioners deductions for sales taxes for 1976 and 1977 computed on the basis of the optional state sales tax tables, but has disallowed certain sales taxes paid in respect of a wedding (1976) and nonbusiness restaurant meals (1977). Section 164(a), I.R.C. 1954, [3] allows a deduction for, inter alia, state and local sales taxes "paid" during the taxable year. As a matter of administrative convenience, the Commissioner permits taxpayers to compute the deduction on the basis of the optional state sales tax tables, and allows additional amounts for sales taxes paid on a select group of costly items, e.g., motor vehicles and airplanes, but neither weddings nor restaurant meals are included in this exception. A taxpayer is at liberty to claim a greater amount, but as with any other deduction the burden of proving entitlement to such amount rests firmly on the taxpayer. *452 Petitioners have not shown that they paid sales taxes in 1976 or 1977 in excess of the amounts stipulated by the parties as the proper amounts from the sales tax tables. As we stated in Edmister v. Commissioner,36 T.C.M. 874, 875, 46 P-H Memo T.C. par. 77,208 (1977): The fact that respondent, as a matter of administrative convenience, permits deductions in accordance with the tax tables and in addition permits deductions with respect to tax on certain specific items, does not relieve a taxpayer * * * from showing that the amount of the deduction he is allowed by the tax tables is less than the sales tax he actually paid if he is to be entitled to a deduction in excess of the amount shown in the tax tables. See also Russo v. Commissioner,43 T.C.M. 1308,     P-H Memo T.C. par.     (May 5, 1982) (Slip Op. p. 16). We hold for the Government on this issue. 4. Work Expenses.Section 162(a) allows a deduction for "all the ordinary and necessary expenses *453 paid or incurred during the taxable year in carrying on any trade or business, including * * * traveling expenses". A taxpayer bears the burden of proving that any expenses incurred are ordinary and necessary expenses of his trade or business. Welch v. Helvering,290 U.S. 111, 115 (1933). Moreover, under section 274(d), no deduction is permitted for traveling expenses unless the taxpayer substantiates the time, place, amount, and business purpose of the expenditure. In this case, petitioners have failed to offer any evidence linking the claimed expenses to either Lorraine Feistman's teaching responsibilities or the stamp and coin activity during the years in question. Petitioners' receipts simply show that amounts were spent, but in the absence of contrary evidence, we must presume that such expenditures were personal. The materials submitted in respect of salary or other credit for trips taken by Los Angeles teachers are only evidence that after January 1, 1979, such a program did exist, but we find them of little value in establishing a business purpose for Lorraine *454 Feistman's trips during 1976 and 1977. On this record, we hold that petitioners have failed to establish that the Commissioner's determination was erroneous, and the Commissioner must therefore be sustained. 5. "Feistman Stamps, Coins and Accessories" (FSCA). The parties have agreed that petitioners incurred losses in connection with FSCA during the years in question, but disagree as to the deductibility of those losses. The Government contends that this activity was not engaged in for profit, and thus the losses are nondeductible. See section 183(a). [4] Petitioners argue that they have conducted this activity in a businesslike manner, with the intention of realizing a profit, and that the losses should therefore be permitted as deductions for 1976 and 1977. See sections 162(a) and 212(1). [5]
*455 Petitioners have previously litigated this issue, for the taxable years 1974 and 1975, and it was held that during those years FSCA "was merely a hobby", and did not rise to the level of a "bona fide profit motivated business activity". Feistman v. Commissioner,supra,41 T.C.M. at 1060, 50 P-H Memo T.C. at 81-375. In that case, we noted the following factors in reaching our decision: (1) the genesis of FSCA from petitioner Eugene Feistman's personal collecting activities, including the establishment of a beginning inventory solely with duplicates from Eugene's personal collection; (2) the absence of a profit from the inception of the activity; (3) poor recordkeeping; (4) the fulltime employment of both petitioners during those years; and (5) the lack of an office or store out of which the activity could be conducted. Our decision was explicitly limited to the years in question; we did not address the issue of when and whether the activity may have become profit motivated at a later point. Sections 162(a) and 212(1) allow as deductions all of the ordinary and *456 necessary expenses of carrying on a trade or business and of producing or collecting income. Section 183(a) provides that if an activity is "not engaged in for profit", which means that it is not an activity in respect of which deductions are permitted under section 162 or section 212, [6] then only those deductions which are authorized by section 183(b)[7] are allowed. Section 183(b) allows deductions up to the amount of gross income derived from the activity during the taxable year. Since the deductions at issue here are losses from FSCA, i.e., expenses in excess of gross income, section 183(b) is not relevant to our inquiry. *457 We have recently reviewed the proper standard for determining whether an activity is engaged in for profit. In Dreicer v. Commissioner, 78 T.C.    , (April 19, 1982), we indicated that a taxpayer's "motive is the ultimate question" (Slip Op. p. 5); and we said that "although a reasonable expectation of profit is not required, the facts and circumstances must indicate that the taxpayer entered into the activity, or continued the activity, with the actual and honest objective of making a profit". (Slip Op. p. 6). Applying this standard to the instant facts, we hold that petitioners are entitled to deduct their 1976 and 1977 losses from FSCA, because the activity was conducted during those years with an "actual and honest objective of making a profit". It is true, as the Government points out, that much remained unchanged from the 1974-1975 period to the 1976-1977 period in respect of the factors identified in our prior decision on this issue. Nevertheless, we are convinced that there was a level of activity with regard to FSCA during the 1976-1977 period which marked a progression *458 of FSCA from an offshoot of Eugene's hobby to a profit-oriented and, by the time of trial, profitable enterprise. During these years, Eugene purchased 100 "first day covers" for each new stamp issued, an amount far in excess of the requirements of an individual collector. In addition, Eugene regularly displayed merchandise for sale at shows and "swap meets", as well as purchasing merchandise at auctions for resale or trade. Although he was still employed fulltime in 1976 and 1977, he was actively engaged in developing a stamp and coin business, complete with an inventory purchased as such and wholly separate from his private collection, and he has devoted more time to this business since his retirement in 1979. FSCA's losses were smaller in 1978 and 1979, and in 1980 the business apparently turned the corner and became profitable. We are faced here with a situation of substantial uncertainty, for it is quite difficult to identify the precise time at which FSCA became sufficiently independent of Eugene's private collecting hobby to constitute a profit-motivated venture. By the end of 1975, that break had not occurred. Since that time, however, Eugene's efforts and investment *459 have produced a growing inventory, an increased level of activity, and a fairly steady march towards establishing a profitable business. We are convinced on these facts that the appropriate time of demarcation was the start of 1976 and that during 1976 and 1977 Eugene engaged in this activity with an "actual and honest objective of making a profit". Dreicer v. Commissioner,supra. We therefore hold for petitioners on this issue. 6. "Feistman Family Insurance Fund" (FFIF). Petitioners claimed a loss of $ 1,089.10 on their 1977 tax return as their share of a loss incurred by FFIF during that year. The loss resulted from damage to an FFIF member's car, which FFIF paid to have repaired. Section 165(a) allows as a deduction a loss incurred during the taxable year which is not compensated for by insurance or otherwise, and in the case of an individual, such loss may include a casualty to nonbusiness property to the extent that the loss exceeds $ 100. In order to deduct a casualty loss, however, the taxpayer must have been the owner of the property damaged. Draper v. Commissioner,15 T.C. 135 (1950). *460 Here, there is no evidence that petitioners had any ownership interest in the damaged car, and in fact it is stipulated that the car belonged to petitioners' son-in-law. Petitioners are therefore not entitled to a deduction for any portion of this loss under section 165. On brief, petitioners contend that FFIF is a limited partnership, and they apparently seek to deduct the amount claimed as their distributive share of the partnership's loss for 1977. Section 7701(a)(2) defines a partnership as "a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not * * * a trust or estate or a corporation". Section 301.7701-3(a), Income Tax Regs., states: "A joint undertaking merely to share expenses is not a partnership". The only evidence in the record on this issue is the stipulation of facts, and it affords no basis for concluding that FFIF was other than an expense-sharing arrangement, initiated because of the difficulty or expense of *461 obtaining commercial insurance. Although petitioners have thus failed to establish the existence of a partnership in support of their position, we do not mean to suggest that they would have been entitled to the claimed deduction even if FFIF were to be classified as a "partnership". Petitioners are not entitled to a deduction for any loss incurred by FFIF in 1977. [8]
7.Additions to Tax. The Commissioner determined additions to tax for 1976 and 1977 pursuant to section 6653(a). That section imposes an addition of five percent of the underpayment of tax if "any part of any underpayment * * * is due to negligence or intentional disregard of rules and regulations *462 (but without intent to defraud)". The burden of proving otherwise is on the petitioners. See Bixby v. Commissioner,58 T.C. 757, 791-792 (1972), appeal dismissed (1st Cir. 1974), and the cases cited therein. Petitioners have introduced no evidence on this issue; we therefore hold for respondent as to the underpayment remaining in light of our resolution of the prior issues herein. Decision will be entered under Rule 155.
Footnotes
1. On brief, petitioner Eugene Feistman sought to submit further factual statements in respect of these claimed "Work Expenses", as well as other issues in this case. These attempted submissions were blanketed by various excuses for not having presented the evidence in question at trial, and it will suffice to describe the excuses as fully consistent with the overall verbal assault on the Government which petitioner Eugene Feistman conducted throughout these proceedings. At trial, it was made clear to petitioner that any factual representations that he wished to have considered by the Court would either have to be agreed to by the Government or stated under oath. Moreover, at the close of both Eugene Feistman's direct testimony and the Government's cross-examination of him, petitioner was asked if he had any further evidence to give, and he answered on each occasion in the negative. We reject petitioner's attempt to supplement the record on brief, an attempt which would place the Government at an obvious disadvantage in view of the absence of an opportunity to cross-examine petitioner in regard to this evidence. The record in this case is limited to the testimony at trial, the First and Supplemental stipulations for trial, and the various exhibits attached to the stipulations. See Rule 143(b), Tax Court Rules of Practice and Procedure.↩
2. See the Ninth Circuit's recent reaffirmation of its position on this issue in Kosmal v. Commissioner,670 F. 2d 842 (9th Cir. 1982), affg. per curiam T.C. Memo. 1979-490↩.
3. SEC. 164. TAXES. (a) General Rule.--Except as otherwise provided in this section, the following taxes shall be allowed as a deduction for the taxable year within which paid or accrued: (4) State and local general sales taxes.↩
4. SEC. 183. ACTIVITIES NOT ENGAGED IN FOR PROFIT. (a) General Rule.--In the case of an activity engaged in by an individual or an electing small business corporation (as defined in section 1371(b)↩), if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section. 5. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *. SEC. 212. EXPENSES FOR PRODUCTION OF INCOME. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year-- (1) for the production or collection of income * * *.↩
6. See sec. 183(c), I.R.C. 1954; sec. 1.183-2(a), Income Tax Regs.↩
7. SEC. 183. ACTIVITIES NOT ENGAGED IN FOR PROFIT. (b) Deductions Allowable.--In the case of an activity not engaged in for profit to which subsection (a) applies, there shall be allowed-- (1) the deductions which would be allowable under this chapter for the taxable year without regard to whether or not such activity is engaged in for profit, and (2) a deduction equal to the amount of the deductions which would be allowable under this chapter for the taxable year only if such activity were engaged in for profit, but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of paragraph (1).↩
8. In an amendment to its answer, the Government asserted an increased deficiency, based on petitioners' share of FFIF's income in 1976, if FFIF were held to be a partnership. Since FFIF was not a partnership, and the Government has not advanced any other argument as to this new matter, on which it has the burden of proof (Rule 142(a), Tax Court Rules of Practice and Procedure↩), the increased deficiency cannot be sustained.